# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY<br><br>V.<br><br>MARY HOLLAND-GARZA | §<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>CASE NO. 4:04CV384<br>(Judge Schneider/ Judge Bush) |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Hartford Life and Accident Insurance Company ("Hartford") filed this suit for declaratory judgment against Mary Holland-Garza. Ms. Garza, a former employee of a Halliburton subsidiary applied for long term disability ("LTD") coverage under the Halliburton plan. Disability benefits are insured benefits issued by Hartford under a group policy. Hartford alleges that Halliburton delegated the responsibility for claims administration to it under the plan. Ms. Garza submitted a claim for disability based on her diagnosis of multiple sclerosis. The claim was denied because Hartford determined that Ms. Garza had a preexisting condition as defined in the policy.

Under the terms of the plan, Garza appealed the decision at least twice. On the second appeal, Hartford conducted an "independent review" and once again denied the claim. On or about July 28, 2004, Garza filed an arbitration demand with the American Arbitration Association seeking long-term disability benefits. She later joined the benefit committee as well as Hartford in the arbitration action. Hartford claims that there is no arbitration provision in its policy and that it has no obligation to arbitrate. Hartford convinced the arbitrator that it had no role in the proceeding since it was not a party to an arbitration agreement, and has now been dismissed from the proceeding.

Hartford requests that the Court grant it injunctive relief declaring that Garza cannot proceed

against Hartford in the arbitration proceeding.  It appears that the arbitrator has already made the decision and, therefore, there is nothing for the Court to determine as to Count One.  Count Two seeks a declaration that Hartford's determination as to a preexisting condition warranting denial of coverage  was not arbitrary and capricious.

Garza has filed an answer and a Motion to Dismiss or stay proceedings.  She claims that the Halliburton plan provides for arbitration as the final step in the process when a claim is denied. Garza states that, at the time this action was filed, there was no dispute between her and Hartford. She claims that she is only following the provisions of the plan as to Halliburton.  Halliburton finds itself in what it perceives to be a "legal black hole" and filed an unopposed motion to intervene which has been granted.  Its predicament  results from  sloppy drafting of plan documents which appear to provide Ms. Garza with alternative forums of relief for denied insured benefits. Halliburton contends that Hartford's denials of insured benefits are final and appealable only to the insurer but has  also included language in its plan which reads to the contrary.  Halliburton contends that Hartford is the proper defendant to Garza's ERISA claim and that claim is properly to be determined in this Court, not in arbitration.  Since the arbitrator has dismissed Hartford, Halliburton is left to defend a claim which was to have been handled by its insurer administrator. Halliburton contends that the arbitration has been stayed pending the reasoned and solon ruling of this court-- whether Halliburton or Hartford had the authority to make the final decision regarding the benefits claim.

Halliburton claims that throughout the claim and appeals process, neither the Plan nor the benefits committee reviewed Garza's claim or appeals from the denial of the claim.  Neither the Plan nor the committee participated in the decision to deny LTD coverage.  Haliiburton contends that the Plan legally delegated authority to Hartford to determine whether participants were entitled to LTD

benefits. Halliburton seeks declaratory judgment that Garza's sole avenue of appeal is to Hartford rather than the Plan Administrator and that any action must lie as to Hartford. Halliburton also seeks an injunction enjoining Garza from pursuing her claim against any entity other than Hartford.

Thus, the Court is left with the task to either enforce the plan as written, but not intended, or enforce the plan as Halliburton intended. Under the plan document, LTD benefits are insured constituent benefits. Article 16.1 provides that plan provisions to the contrary notwithstanding, the provisions of Article 16 shall be applicable to all Insured Constituent Benefit Programs. Article 16.3 delegates responsibility to Hartford to administer LTD benefits and exercise other fiduciary functions described in the group insurance contracts. Hartford has the discretion to interpret the provisions of the group insurance contract pertaining to eligibility for and amount of LTD benefits under the plan. Article 16.4 provides that LTD benefits are provided for by an insurance contract as well as determination of eligibility. Article 16.5 provides that an appeal of insurance benefits must be made to the insurer within a certain time period.

The last paragraph in Article 16.5 is the crux of the problem. Halliburton maintains in its affidavit in support of its motion that the paragraph was erroneously inserted. The paragraph provides as follows:

> The Halliburton Dispute Resolution Program shall be the exclusive final and binding appeal process of any appeal of any benefit determination after the initial appeal has been completed, including any final decision by the Plan Administrator. The Halliburton Dispute Resolution Program has, as its final step, binding arbitration. The substantive and procedural terms of the Halliburton Dispute Resolution Program are incorporated herein by reference.

(Welfare Benefits Plan, Art. 16.5, HAL-237). The paragraph is quite clear. Once an appeal has been completed, including a final decision by the Administrator, an aggrieved employee must resort to the Halliburton Dispute Resolution Process. Article 1.1 (11) defines a constituent benefit program

3

as one listed on Appendix A to the Plan. The LTD plan is listed on Appendix A and the policy is a Constituent Benefit Program Document as defined in Article 1.1(12). Article 1.6 provides that "in the event that any term, provision, implication, or statement in a Constituent Benefit Program Document (Hartford Policy) conflicts with, contradicts, or renders ambiguous a term, provision, implication, or statement in this document (Plan Document), such term, provision, implication or statement in this document (Plan Document ) shall control." (Welfare Benefits Plan, Art. 1.6, HAL-191). There is nothing in Article 16 which informs the participant that any remedy for denial of insured benefits lies only with Hartford in a court of law. If the language of arbitration was erroneously included, then under the plan, the participant's only recourse for review is Article 7, which also provides for arbitration.

The Hartford Policy contains information related to the participant's ERISA rights. The explanation attached to the policy provides in part "*If your claim for a welfare benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the plan reviewed (sic) and reconsider your claim.*" (emphasis added). It is not entirely clear from the language above what the language means. Either the Plan can review the claim or the Plan can be reviewed by someone and the claim reconsidered. The Court believes that the meaning only makes sense if the former meaning is applied. In any event, it is one of several instances of confusing, ambiguous, and sloppy drafting of a plan intended to benefit employees rather than confuse them.[1] The employee is informed that he or she *may* file suit in state or federal court if a claim for benefit is denied. There is no language in the policy which puts the employee on notice that her only recourse for denial of benefits is to sue Hartford. In fact, as stated above, it appears that

---

[1]Evidently, the Plan was reviewed by a lawyer for Halliburton. It has a stamp on the front indicating legal review with the initials "BAM."

she can have the plan, not the insurance company, review the denied claim. The plan name is the Halliburton Company Welfare Benefits Plan and the Halliburton Company Group Insurance Plan. The Administrator of the Plan is the Benefits Committee. Appendix A of the Halliburton Company Welfare Benefits Plan lists the Hartford LTD Insurance Program as a covered program. Nowhere in the Hartford Policy is there any statement that appeal of a denied claim can only be directed to Hartford. If such is the case as argued, both companies neglected to indicate it in a clear manner.

Halliburton also provides its employees with a booklet entitled "Benefit 2000--Your Health and Group Benefits Handbook." (Exh. C). LTD is discussed. The employee is told she has a right to appeal a denied claim and should refer to the Overview section to determine how to appeal a denied claim. However, the Overview section makes no mention of how to appeal. Page 132 of the Health and Benefits Handbook provides that the agent for service of process is the Plan Administrator. The booklet also provides that service of process *may* also be made on Hartford.

Halliburton also issued a Summary of Material Modification for Benefit Level Employees. In the summary booklet, the participant is informed that if a claim for benefits is denied, she may file suit in state or federal court. She is also informed that she has the right for the Plan to review and reconsider a denied claim. (Summary at pg. 26; HAL 166). The booklet also provides that if the handbook and legal documents differ, the official plan documents govern the way the plan is administered. (Summary at pg. 27; HAL 167). Page 28 of the summary provides that long term disability is an insured benefit. The employee is directed to submit a written request for review to the insurance company. The employee is informed that the review process is contained in the group insurance documents. The summary further provides: "Once you are notified in writing that a decision has been reached on your request for review, any further action by you or your beneficiary must be directed toward the applicable benefit provider, insurance company, or HMO. The Plan

Administrator has delegated final authority over insured benefits and any appeals associated with insured benefits to the applicable benefits provider, insurance company, or HMO. *Any decision on their part that is not arbitrary or capricious will be considered final by the Plan Administrator.*" (Summary at pg. 29; HAL–169) (emphasis added). Halliburton contends that this language only indicates that once the appeal process has been completed, the insurer's decision will be considered final unless court review is to the contrary. However, when the booklet is read in totality, it does appear to indicate that the plan contemplates some review for LTD benefits other than solely by Hartford.

To further add to the confusion, page 30 of the Summary under the Dispute Resolution Program heading provides that "any further appeals of denied claims for noninsured benefits under the Halliburton Company Welfare Benefit Plan, including any of its *constituent benefit programs* must be handled in accordance with the Halliburton Dispute Resolution Program, which includes binding arbitration as its final step." (Summary at pg. 30; HAL–170). The LTD plan is a constituent benefit program under the Halliburton Welfare Benefit Plan. Perhaps Halliburton intended to restrict the language noted above to non-insured constituent benefit programs, but such is less than clear.

Halliburton has also instituted a Dispute Resolution Program and issued its employees a booklet concerning rights and remedies under the DRP. The DRP is intended to create an exclusive procedural mechanism for the final resolution of all Disputes falling within its terms. (Exh. F). On page 17, the employee is told he can use the DRP for concerns related to benefit plans. The employees are specifically told that there are methods in place as to each benefit program and that they should address their concerns with those methods *prior to contacting the DRP*. Thus, it appears that Halliburton has affirmatively taken on the responsibility, once again, to review the denial of <u>insured</u> benefits by its insurers.

Article 7.3(d) of the Plan document provides that "The Halliburton Dispute Resolution

Program shall be the exclusive final and binding appeal of *any* benefit determination after the initial appeal has been completed, including any final decision by the Plan Administrator. The Halliburton Dispute Resolution Program has, as its final step, binding arbitration." (Welfare Benefits Plan, Art. 7.3(d); HAL–213). Although the Plan Administrator has the sole and absolute discretion to construe and interpret any and all provisions of the Plan and the Constituent Benefit Programs, including resolving ambiguities in the Plan, the Court finds that filing a suit for declaratory relief does not satisfy this obligation.[2]

"Any review of an ERISA benefit determination must begin with the relevant plan language." *Aboul-Fetouh v. Employee Beneftis* Comm., 245 F.ed 465, 468 (5th Cir. 2001). "A plan administrator's factual determinations are always reviewed for abuse of discretion; but its construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed *de novo* unless there is an express grant of discretionary authority in that respect, and if there is such then review of those decisions is also for abuse of discretion." *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004). In this case, Hartford is given the discretion to interpret the provisions of the Group Insurance Contracts pertaining to the eligibility for and amount of benefits under the Plan. (Welfare Benefits Plan, Art. 16.3; HAL-236). It is in this same article that the language reserving review under the DPR is included.

In resolving conflicts between a summary plan document and the plan document, the Court must first determine whether there is a conflict. Clearly, the plan document contains a requirement of arbitration. The summary booklet provides that if a claim for benefit is denied, the participant has the right to have the Plan review and reconsider the claim. (Summary at pg. 26; HAL-166). The

---

[2] Halliburton has not moved for declaratory judgement on this ground in any event.

participant is also informed that should the summary document and legal plan documents differ, the official plan documents govern the way the plan is administered. (Summary at pg. 27; HAL-167). The participant is also informed that the LTD benefit is an insured benefit.  The participant is directed to request a review of the claim with the insurance provider.  The participant is also notified that any action for denial of a claim must be directed to the insurance company, and the plan administrator has delegated final authority over insured benefits and any appeals associated with insured benefits to the insurance company.  Any decision that is not arbitrary or capricious will be considered final by the Plan Administrator.  The summary also provides that "any further appeals of denied claims for uninsured benefits under the Halliburton Company Welfare Benefits Plan, *including any of its constituent benefit programs,* must be handled in accordance with the Dispute Resolution Program, which includes binding arbitration as its final step." (Summary at pg. 30; HAL-170).  The participant is also informed that the DRP applies to "any relief you or anyone claiming on your behalf may seek through the court system." (*Id.*).

Halliburton has also published a booklet on the DRP program.(*See* Exh. F).  The booklet provides questions and answers concerning the program:

> Q.5  What if my dispute concerns a benefit plan. . . .Can I use the Program then?
>
> A.5 First, you can use the DRP for concerns about benefit plans. However, there are methods place with each benefit plan to address your concerns, and you should use those methods prior to contacting the DRP.

(Exh. 12 at pg. 17).

The summary plan must be read as a whole.  It is error to attend only to one paragraph, page, or portion of the summary.  *See Hansen v. Cont'l Ins. Co.* , 940 F.2d 971 (5th Cir. 1991).  ERISA requires that the summary plan description be accurate and sufficiently comprehensive to reasonably apprise participants of their rights and obligations under the plan. 29 U.S.C. § 1022. All parties are

partially correct in their positions. The summary plan indicates that an appeal of denial for LTD must be made to the insurance company and subsequent relief must be directed to the insurer. However, when viewed in its totality, the summary description also provides for and encourages arbitration of appeals from denial of benefits, without qualification as to insured or non-insured benefits. Is the Plan ambiguous or is it merely providing the participant with more than one avenue of redress? Although it appears that the latter question should be answered in the affirmative, the Court need go no further than the Plan document. Halliburton expressly states that in the event of any inconsistency in the documents, the Plan document controls. When a summary plan favors an employer, the employer cannot disavow a disclaimer in the summary stating that the plan controls. *Glocker v. W.R. Grace & Co.*, 974 F2d. 540, 542-43 (4th Cir. 1992). Defendants, as drafters of this language asserting the supremacy of the Summary Plan, are bound by the words they chose. *See Hansen*, 940 F.2d at 981-82. (stating that any ambiguity in an Summary Plan Description ("SPD") "must be resolved in favor of the employee and made binding against the drafter"); *Glocker*, 974 F.2d at 542-43 (4th Cir.1992) (employer which represented to its employees that the ERISA plan, and not the SPD handbook, governed questions about benefits could not repudiate that representation and rely on statements in the SPD purporting to confer discretionary authority on administrator); *see also Sturges v. Hy-Vee Employee Benenefits Plan & Trust*, 991 F.2d 479, 480-81 (8th Cir. 1993) (ERISA plan administrator abused its discretion in interpreting plan to deny coverage where plan summary stated that plan controlled when summary and plan conflicted and where plan unambiguously afforded coverage, while summary was at odds with plan on issue).

The documents tendered to the Court in this case are replete with references to the employee's right to have her case submitted to final and binding arbitration. The plan presents alternative avenues of relief. Ms. Garza should not be penalized for a plan whose documents were put together

haphazardly without insuring that they flowed in a logical manner. When there is doubt, courts lean in favor of arbitration, particularly when a party is told she has that right. *Harvey v. Joyce*, 199 F.3d 790, 792 (5th Cir. 2000). Defendant's Motion to Dismiss should be granted.

## **RECOMMENDATION**

Based upon the foregoing, the Court recommends that Defendant's Motion to Dismiss be GRANTED. It is further recommended that this dispute be ordered to arbitration to the extent that the arbitrator has jurisdiction over the parties. It is finally recommended that all motions not previously ruled on be DENIED.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 16th day of September, 2005.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE